**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **Criminal No. 2:17-cr-00118-GZS** |
| | **)** | |
| **JAMES A. ROBINSON** | **)** | |

**GOVERNMENT'S TRIAL BRIEF**

On August 22, 2017, the Defendant, James A. Robinson, was indicted on five charges: 1) theft of public money in the form of Supplemental Nutrition Assistance Program ("SNAP") benefits, in violation of Title 18, United States Code, Section 641; 2) health care fraud in obtaining MaineCare coverage, in violation of Title 18, United States Code, Section 1347; 3) Social Security Supplemental Security Income ("SSI") benefit fraud through failure to disclose events, in violation of Title 42, United States Code, Section 1383a(a)(3); 4) Social Security SSI benefit fraud through making materially false statements, in violation of Title 42, United States Code, Section 1383a(a)(2); and 5) false statements in a matter within the jurisdiction of the executive branch of the United States Government, in violation of Title 18, United States Code, Section 1001(a)(1).

## I. STATUS OF THE CASE

A. Jury selection is scheduled for February 5, 2018.

B. Trial is scheduled to begin February 20, 2018. Three trial days have been reserved.

C. The government expects to call approximately ten witnesses at trial and anticipates that its evidence will take two days to present.

D. The government's opening statement is expected to last approximately 15 minutes.

## II. ANTICIPATED EVIDENCE

Robinson applied for Social Security disability benefits in August 2004. In October 2004, he was awarded SSI benefits based on a disability beginning in March 2002. Robinson's application and approval materials informed him that, as a condition of receiving benefits, Robinson was required to report any change in his address or in the composition of his household. He was reminded of this requirement in notices explaining any adjustments to his benefit amounts for the upcoming year. SSI is a needs-based program, and is subject to restrictions based on an individual's available assets and income. Robinson also applied for MaineCare and SNAP benefits, and was approved to receive both on the basis of his eligibility for SSI.

At the time of his application for SSI, Robinson reported that he lived alone in Cornish, Maine. In actuality, this property was not zoned for residential use, could not be zoned for residential use due to its proximity to a river, and had no running water, septic service, or electricity service. The only building on the property is in a dilapidated state and uninhabitable, and the Town of Cornish has refused to issue a certificate of occupancy. Evidence suggests that Robinson was in fact living in New Hampshire since at least 2003, including: a New Hampshire driver's license issued on June 18, 2003, listing an address in Concord;[1] notations made by Maine Department of Health and Human Services ("ME/DHHS") in its Automated Client Eligibility System ("ACES") reflecting statements by Robinson that he had some difficulty collecting his mail in Maine, and showing that he had a New Hampshire phone

---

[1] He later obtained a Maine driver's license, issued December 7, 2012, listing an address in Cornish, Maine.

number; and transactions made on his Electronic Benefit Transfer ("EBT") card and his bank account records, which reveal the vast majority of his expenditures occurred in Concord, New Hampshire. Living in New Hampshire would make him ineligible for MaineCare coverage.

Robinson married Hope Watson on March 22, 2008, in Concord, New Hampshire. Robinson had been romantically involved with Hope and living with her at an apartment in Concord for some time before this point. Robinson was added to the lease for this apartment in February 2008. Robinson and Hope leased this apartment from Fellowship Housing Opportunities, Inc., which was also Hope's employer since 1997. From 2008 through 2013, Hope had earnings that were sufficient to make Robinson ineligible for SSI payments while living with her. This would have also made him ineligible to receive MaineCare and SNAP benefits.

Evidence will show that Robinson and Hope lived at their apartment in Concord until they were evicted for nonpayment of rent on August 5, 2009. After this, Robinson and Hope lived with Robinson's mother for a time, and then moved to another apartment, both in Concord.

Robinson did not report these changes in his living situation during his annual reviews with ME/DHHS. Starting in December 2011, annual reviews reflect that Robinson reported that he was married but separated, and that he lived alone in Maine, while his wife lived in New Hampshire.

Social Security does not administer annual reviews, but it does send notices concerning adjustments to benefit amounts, which remind beneficiaries to report any changes in their living conditions. Additionally, Social Security sent Robinson a

notice dated December 29, 2010, explaining that the agency had received information from computer matching about a bank account that might affect his eligibility for SSI, and asked him to provide information concerning this. After several additional notices requesting this information, Robinson finally provided it in June 2011, and the agency issued a redetermination finding he continued to be eligible for SSI. As part of this redetermination, Robinson again represented that there had been no changes in his living situation, that he lived alone in Cornish, Maine, and did not expect this to change. He further represented that he did not get help or money from any person not living with him or any agency to pay for food, rent, mortgage payments, property insurance, property taxes, heating fuel, gas, electricity, garbage removal, water, or sewage. Robinson was again reminded that he was required to report changes in his living situation within 10 days after the month in which it occurred.

Hope eventually became ill, and was terminated from employment with Fellowship Housing in July 2013 for not showing up to work without explanation. Robinson collected a severance check on behalf of Hope following this. Hope ultimately died in October 2013. Robinson did not initially report her death to Social Security or ME/DHHS. Later that month, Robinson collected a $35,000 life insurance death benefit as Hope's surviving spouse. He did not report either the severance check or the life insurance benefit to Social Security or ME/DHHS.

Robinson did not report Hope's death to Social Security until April 2015, nearly 16 months after the fact, when he applied for widower's insurance benefits. He reported on his application that he had been living with his wife at the time of her death. In discussing the matter with claims representative Danielle Adams in the

Social Security field office in Concord, New Hampshire, Robinson reported that he had been living with his wife in Concord until she moved to hospice shortly before her death, and that they had lived together since they were married. He said that he presently lived in Cornish, Maine. When pressed on his living arrangements during the interview, Robinson ultimately changed his account, later stating that he "went back and forth" between Concord and Cornish, and declined to sign a statement clarifying his living situation. He amended his application later on the same day to reflect that he had not been living at the same address as his wife when she died, in so doing acknowledging that false statements in connection with this application were a crime punishable under federal law. Several days later, he was approved for disabled widower's benefits beginning October 2014, but was told he did not qualify for the lump sum death payment because eligibility requires living with the spouse at the time of death.

In July 2015, ME/DHHS mailed Robinson a letter requesting his presence at an interview later that month, to discuss his loss of eligibility for SSI. Robinson rescheduled this appointment for September 8, 2015. He did not arrive on time for this meeting, and when telephoned, said he would arrive in approximately one hour and 20 minutes. Special Agent Joe Desantis with the Social Security Administration's Office of the Inspector General and Investigator Susan Black with ME/DHHS were present during the interview. During this interview, Robinson admitted that he had been married to Hope, and that his name was on her lease, but he denied living with her. Rather, he said he lived in Maine and traveled back and forth between Maine and New Hampshire, claiming that the landlord was lying if she said he lived with Hope.

He also claimed he informed Social Security of this information during his annual reviews. The evidence will show that these statements were false. Robinson was informed that, based on the information he provided, he would no longer receive benefits from ME/DHHS.

## III. STATUTE AND ELEMENTS

Robinson has been charged in Count 1 with theft of public money for improperly receiving over $1,000 worth of SNAP benefits, in violation of 18 U.S.C. § 641. To find him guilty of this charge, the government must prove the following elements beyond a reasonable doubt:

(1) The money described in the indictment belonged to the United States;

(2) Robinson knowingly and willfully stole or converted the money to his own use; and

(3) Robinson did so with the intent to deprive the United States of the use or benefit of the money.

18 U.S.C. § 641.

Robinson has also been charged in Count 2 with health care fraud for obtaining coverage through MaineCare, in violation of 18 U.S.C. § 1347. To find him guilty of this charge the government must prove the following elements beyond a reasonable doubt:

(1) A scheme, substantially as charged in the indictment, to defraud a health care benefit program, or to obtain by false or fraudulent pretenses, representations, or promises any money owned by or under the custody or control of such a program;

(2) Robinson knowingly and willfully participated in this schemed with the intent to defraud; and

(3) The scheme was executed in connection with the delivery of, or payment for, health care benefits, items, or services.

18 U.S.C. § 1347.

Robinson has been charged in Count 3 with SSI benefit fraud through failure to disclose events, in violation of 42 U.S.C. § 1383a(a)(3). To find him guilty of this charge, the government must prove the following elements beyond a reasonable doubt:

(1) Robinson had knowledge of the occurrence of any event affecting his initial or continued right to SSI benefits;

(2) He concealed, or failed to disclose, this event; and

(3) He did so with fraudulent intent to secure a benefit in a greater amount or quantity than is due or when no such benefit is authorized.

42 U.S.C. § 1383a(a)(3).

Robinson has also been charged in Count 4 with SSI benefit fraud through making materially false statements, in violation of 42 U.S.C. § 1383a(a)(2). To find him guilty of this charge, the government must prove the following elements beyond a reasonable doubt:

(1) Robinson knowingly and willfully made or caused to be made any false statement or representation of a material fact; and

(2) This statement was for use by the Social Security Administration in determining his rights to SSI benefits.

42 U.S.C. § 1383a(a)(2).

Finally, Robinson has been charged in Count 5 with making false statements in a matter within the jurisdiction of the executive branch of the United States Government, in violation of 18 U.S.C. § 1001(a)(2).[2] To find him guilty of this charge, the government must prove the following elements beyond a reasonable doubt:

(1) Robinson knowingly and willfully made a material false statement;

(2) He made the statement voluntarily and intentionally; and

(3) He made the statement in an interview with a Special Agent of the Social Security Administration, Office of the Inspector General.

18 U.S.C. § 1001(a)(2)

## IV. STIPULATIONS

While the parties do not have any stipulations at this time, counsel will confer about possible stipulations prior to the start of trial.

---

[2] The undersigned notes that the indictment charges 18 U.S.C. § 1001(a)(1), but in substance, implicates subsection (a)(2) of the statute rather than subsection (a)(1). Accordingly, the government cites 18 U.S.C. § 1001(a)(2) here.

## V. CONCLUSION

This brief has addressed some of the issues that might arise at trial. The government requests leave of Court to file other additional memoranda of law that may be necessary or appropriate as the February 20, 2018 trial approaches.

Dated at Portland, Maine on January 28, 2018.

HALSEY B. FRANK
UNITED STATES ATTORNEY

*/s/ Jeanne D. Semivan*
Special Assistant U.S. Attorney
U.S. Attorney's Office
100 Middle Street, East Tower
Portland, ME 04101
(207) 780-3257
jeanne.semivan@usdoj.gov

*/s/ Craig M. Wolff*
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street, East Tower
Portland, ME 04101
(207) 780-3257
craig.wolff@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, I electronically filed the above **Government's Trial Brief** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan M. Goodman
jgoodman@troubhheisler.com

*/s/ Jeanne D. Semivan*
Special Assistant U.S. Attorney